UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| John Fralish, *on behalf of himself and others similarly situated*, | ) CASE NO. 3:22-cv-176-DRL-MGG |
| Plaintiff, | ) |
| v. | ) |
| Ceteris Portfolio Services, LLC, | ) |
| Defendant. | ) |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS UNOPPOSED
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**Introduction**

Following a year of contested litigation, the parties agreed to resolve this Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, class action with the assistance of experienced mediator Hon. Diane M. Welsh (Ret.) of JAMS. In short, Ceteris Portfolio Services, LLC ("Defendant") will create a non-reversionary, all-cash common fund in the amount of $761,850.00 ("Settlement") for the benefit of Settlement Class Members.[1] Each of the 590 participating Settlement Class Members stands to receive approximately $752.[2] This is a tremendous result in light of the serious risks and uncertainties associated with continued litigation.

---

[1] Capitalized terms not defined herein have the same meanings set forth in the parties' settlement agreement, which previously was filed with its exhibits. ECF No. 44-1.

[2] This expected per-claimant recovery accounts for the expected notice and administration costs, an award of attorneys' fees, costs, and litigation expenses, and a service award. *See* ECF No. 46. The per-claimant recovery may change slightly if additional late claims are received or if any claims are subsequently discovered to be duplicates or otherwise invalid.

1

This Court preliminarily approved the Settlement on May 19, 2023. *See* ECF No. 45. Thereafter, the class administrator—KCC Class Action Services, LLC ("KCC")—sent the Court-approved notice by U.S. Mail, with a detachable claim form, to potential class members. In addition, KCC published notice of the settlement, including on a dedicated website, www.CeterisTCPAsettlement.com. After a robust notice campaign, no objections were made to the Settlement, nor did any persons exclude themselves from it.[3] Moreover, no objections resulted from notice provided to governmental agencies under the Class Action Fairness Act. In light of the Settlement's considerable benefits and the lack of opposition from Defendant or any Settlement Class Members, John Fralish ("Plaintiff") respectfully submits that this Court should finally approve the Settlement.

## Summary of the Settlement

The Settlement resolves this matter on behalf of the following class ("Settlement Class"):

> All persons and entities throughout the United States (1) to whom Ceteris Portfolio Services, LLC delivered, or caused to be delivered, a voice mail box direct drop or ringless voice message, (2) between June 1, 2021 and February 1, 2023, (3) to a cellular telephone number Ceteris Portfolio Services, LLC designated with an internal "wrong number" designation at some point during the account history.

Each participating Settlement Class Member will receive an equal share from the non-reversionary, all-cash, $761,850.00 common fund ("Settlement Fund"), after deducting the cost of notice to potential Settlement Class Members and claims administration, costs and litigation expenses, for which Plaintiff's counsel petitioned this Court (*see* ECF No. 46), attorneys' fees, calculated as a percentage of the Settlement Fund, for which Plaintiff's counsel petitioned this Court (*id.*), and a service award to Plaintiff, for which he petitioned this Court (*id.*) (collectively, "Expenses"). It is expected that each participating Settlement Class Member will receive

---

[3]   The objection and exclusion deadline passed on August 2, 2023. *See* ECF No. 45 at 9.

approximately $750.

**Class Notice and Claims**

KCC successfully delivered notice to potential Settlement Class Members in accordance with this Court's Preliminary Approval Order. *See* Declaration of Vanessa Santacruz ("Santacruz Dec."), attached as Exhibit A.

*Direct Mail Notice*: KCC delivered direct mail notice, via U.S. Mail, to potential Settlement Class Members, which included summary notice of the settlement and a detachable claim form. KCC identified names and addresses of potential Settlement Class Members by performing reverse look ups of telephone numbers provided to it by Defendant. *See id.*, ¶¶ 1-9.

*Settlement Website*: In addition, KCC established and maintains a website dedicated to the settlement—http://www.CeterisTCPAsettlement.com/—that includes information pertinent to Settlement Class Members such as court filings, as well as answers to frequently asked questions. *Id.*, ¶ 10. Settlement Class Members were able to view notice documents and submit claims via the settlement website. *Id.*

*Toll-Free Information Line*: KCC established and maintains a toll-free telephone number (844) 476-0026—for Settlement Class Members to obtain information about the Settlement. *Id.*, ¶ 11.

*Claims*: As of August 10, 2023, a total of 590 claims were received by KCC and considered to be valid. *Id.*, ¶ 12.

*No exclusions*: No Settlement Class Members excluded themselves from the Settlement. *Id.*, ¶ 14.

*No objections*: No Settlement Class Members objected to the Settlement, nor did any government official. *Id.*, ¶ 13.

## Argument

**I. This Court should confirm its certification of the Settlement Class under Rule 23 for settlement purposes.**

This Court previously certified the Settlement Class for settlement purposes. *See* ECF No. 45 at 2-3. Because nothing has changed in the interim warranting a departure from the Court's reasoning, Plaintiff respectfully submits that this Court should confirm its certification of the Settlement Class for settlement purposes.

**II. The Settlement is fair, reasonable, and adequate under Rule 23(e).**

"Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); *see also Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305, 313 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998) ("Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources.").

Against that backdrop, the Seventh Circuit has identified five factors to assess whether a settlement proposal is fundamentally fair, reasonable, and adequate: (1) the strength of the plaintiff's case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement among affected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006).

As well, Rule 23(e) requires consideration of several additional factors, including whether the class representative and class counsel have adequately represented the class, and whether the settlement treats class members equitably relative to each other. Plaintiff submits that each factor

4

supports the conclusion that the Settlement is fundamentally fair, adequate, and reasonable.

### A. The strengths of Plaintiff's case, compared to the terms of the proposed settlement, favor approval.

Despite facing serious risks in certifying a class for litigation purposes and on the merits, Plaintiff secured considerable cash relief for participating Settlement Class Members. Indeed, absent settlement, Defendant was certain to oppose the certification of any litigation class[4]—as opposed to the Settlement Class here presented—and would have opposed summary judgment for Plaintiff and/or sought summary judgment for itself. Discovery battles also loomed, including Plaintiff's pending motion to compel. ECF No. 21. Trial remained a possibility, and likely appeals thereafter.

Interpretations of the TCPA are ever-evolving and notoriously unpredictable, further injecting uncertainty into the outcome. As one example, during the pendency of this case, the FCC addressed a highly relevant question that was unanswered—and risky—at the time Plaintiff filed this matter. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Protection Act of 1991*, CG Docket No. 02-278 (Nov. 21, 2022) ("In this Declaratory Ruling and Order, we find that 'ringless voicemail' to wireless phones requires consumer consent because it is a 'call' made using an artificial or prerecorded voice and thus is covered by section 227(b)(1)(A)(iii) of the 1991 Telephone Consumer Protection Act (TCPA).").

And even had Plaintiff succeeded on the merits and prevailed on appeal, a reduction in statutory damages was possible. *See Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1125 (9th Cir. 2022)

---

[4] Certification of a "wrong number" TCPA class over objection is no guarantee. *See, e.g.*, *Revitch v. Citibank, N.A.*, No. 17-6907, 2019 WL 1903247 (N.D. Cal. Apr. 28, 2019) (declining certification); *Tomeo v. CitiGroup, Inc.*, No. 13-4046, 2018 WL 4627386, at *10 (N.D. Ill. Sept. 27, 2018) (same); *Davis v. AT&T Corp.*, No. 15-2342, 2017 WL 1155350, at *5 (S.D. Cal. Mar. 28, 2017) ("[d]efendant has come forward with evidence that a call with a 'wrong number' notation proves nothing because many customers tell callers they have reached the wrong number, though the customer's number was dialed, as a 'procrastination tool' to avoid speaking on the phone").

(vacating "the district court's denial of the defendant's post-trial motion challenging the constitutionality of the statutory damages award to permit reassessment of that question guided by the applicable factors").

Against this backdrop, and given the considerable risks and uncertainties at play, the $761,850.00 Settlement Fund constitutes an incredible result for Settlement Class Members. Indeed, the Settlement provides substantial cash relief—more than $750—to each participating Settlement Class Member. This substantial per-claimant recovery exceeds many other recently approved TCPA class action settlements. *See, e.g.*, *Jackson v. Discover Fin. Servs. Inc.*, No. 1:21-cv-04529, 2023 WL 4780037 (N.D. Ill. July 26, 2023) (recovery of approximately $201 per claimant); *Lucas v. Synchrony Bank*, No. 4:21-CV-70-PPS/JEM, 2023 WL 3143816 (N.D. Ind. Apr. 25, 2023) (Simon, J.) (recovery of approximately $310 per claimant); *Miles v. Medicredit, Inc.*, No. 4:20-cv-1186-JAR, 2023 WL 1794559 (E.D. Mo. Feb. 7, 2023) ($157 per claimant); *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) ($52.50 per claimant); *Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 947 (D. Minn. 2016) ($33.20 per claimant); *Wright v. Nationstar Mortg. LLC*, No. 14-10457, 2016 WL 4505169, at *8 (N.D. Ill. Aug. 29, 2016) (approximately $45 per claimant); *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (finding that $34.60 per person falls "within the range of recoveries" in a TCPA class action); *Rose v. Bank of Am. Corp.*, Nos. 11-2390, 12-4009, 2014 WL 4273358, at *10 (N.D. Cal. Aug. 29, 2014) (claimants received between $20 and $40 each); *Steinfeld v. Discover Fin. Servs.*, No. 12-1118, 2014 WL 1309352, at *7 (N.D. Cal. Mar. 31, 2014) (approving a settlement that distributed less than $50 per claimant, *see* ECF No. 101).

Underscoring the fairness of the compensation recovered for Settlement Class Members, the court in *Markos v. Wells Fargo Bank, N.A.* characterized a $24 per-claimant recovery in a

TCPA class action—many multiples less than what participating Settlement Class Members stand to receive here—as "an excellent result when compared to the issues Plaintiffs would face if they had to litigate the matter." No. 15-1156, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017).

Moreover, Settlement Class Members will obtain real monetary relief, despite the purely statutory damages at issue—damages that courts have deemed too small to incentivize individual actions. *See, e.g.*, *St. Louis Heart Cntr., Inc. v. Vein Cntrs. for Excellence, Inc.*, No. 12-174, 2013 WL 6498245, at *11 (E.D. Mo. Dec. 11, 2013) (explaining that because the statutory damages available to each individual class member are small, it is unlikely that class members have an interest in individually controlling the prosecution of separate actions). It is likely that many Settlement Class Members were unaware of their TCPA rights, let alone how to begin enforcing them. Even fewer individuals would pay $402 to file a lawsuit, only to potentially recover $500. *See Mims v. Arrow Fin. Servs.*, *LLC*, 565 U.S. 368, 386 (2012).[5]

Therefore, because of the Settlement, participating Settlement Class Members will receive significant money they would have been unlikely to pursue on their own.

### B. The likely length, complexity, and expense of continued litigation favor approval.

There can be no doubt that additional litigation would have been costly, time-consuming, and ultimately risky. *See Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("The costs associated with discovery in complex class actions can be significant."). The complex issues encompassed by this action, together with the length of time and expense likely necessary

---

[5]   "As Judge Posner once quipped, 'only a lunatic or a fanatic sues for $30.'" *Shah v. Zimmer Biomet Holdings, Inc.*, No. 3:16-cv-815-PPS-MGG, 2020 WL 5627171, at *4 (N.D. Ind. Sep. 18, 2020) (Simon, J.) ("And no lawyer is going to take a case worth so little on a contingency fee basis either. But multiply that times several thousand and you've got yourself something, both for the plaintiffs and the lawyers.") (quoting *Carnegie v. Household Int'l*, 376 F.3d 656, 661 (7th Cir. 2004)).

to resolve this case by continued litigation, therefore weigh in favor of approval. *See Vought v. Bank of Am., N.A.*, 901 F. Supp. 2d 1071, 1092 (C.D. Ill. 2012) ("Overall, the significant complexity of the issues this case presents, the increased length of time that would be necessary to resolve this case by continued litigation, and the corresponding dramatic increase in costs weigh in favor of approving the proposed settlement.").

Indeed, had the parties not reached an agreement to settle this matter, significant additional litigation awaited. This includes discovery battles, fact depositions, expert submissions and depositions, a contested motion for class certification, and potential dispositive and *Daubert* motions. The immediate cash relief afforded to Settlement Class Members now, in comparison to the length, expense, and complexity of continued litigation, favors approval.

### C. That no Settlement Class Members objected to the Settlement or excluded themselves from it strongly supports approval.

The lack of opposition to the Settlement also favors approval. *See In re TikTok, Inc. Consumer Privacy Litig.*, 617 F. Supp. 3d 904, 937 (N.D. Ill. 2022) ("The relative dearth of opposition to the settlement and the reaction of class members weighs in favor of approval as well."); *accord Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1152 (8th Cir. 1999) ("Finally, fewer than 4 percent of the class members objected to the settlement, significantly fewer than the number of objectors to other settlements that have been approved.").

Of the thousands of potential Settlement Class Members to whom KCC distributed direct notice, no Settlement Class Members lodged any kind of objection to it, nor did any opt out of the Settlement. *See* Santacruz Dec., ¶¶ 13-14. This overwhelmingly favorable reaction to the Settlement supports its approval. *See Leung v. XPO Logistics, Inc.*, 326 F.R.D. 185, 197 (N.D. Ill. 2018) ("Not many class members have voiced opposition to the settlement, which is another factor in favor of settlement approval."); *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir.

1995) ("The fact that only a handful of class members objected to the settlement similarly weighs in its favor.").

Given that none of the thousands of potential Settlement Class Members—nor any attorneys general—made an objection to the Settlement, it should be approved. *See, e.g.*, *Slaughter v. Wells Fargo Advisors, LLC*, No. 13-cv-06368, 2017 WL 3128802, at *2 (N.D. Ill. May 4, 2017) ("The Court further finds that the response of the Settlement Class Members to the Settlement Agreement supports approval of the Settlement. As of the date of this Order, no Settlement Class Member objects to the Settlement. Given that notices were mailed to 542 potential class members, the lack of objections indicates strong support for the Settlement from the Settlement Class."); *Shaw v. Interthinx, Inc.*, No. 13-CV-01229-REB-NYW, 2015 WL 1867861, at *4 (D. Colo. Apr. 22, 2015) ("[N]ot a single person objected to the Settlement, and only one class member excluded himself from it. This is a strong indication that the Settlement is fair, reasonable, and adequate."); *see also Garcia v. Gordon Trucking, Inc.*, No. 1:10-CV-0324 AWI SKO, 2012 WL 5364575, at *6 (E.D. Cal. Oct. 31, 2012) ("The adequacy of the amount offered in settlement is also reinforced by the absence of any objection to the Settlement, as well as the low opt-out rate of less than 1% of the class.").

As Judge Simon held in granting final approval in *Shah*, "[t]he number of claims looks even better though compared to the number of class members who have opted out. Only seven class members timely submitted forms requesting to be excluded from the settlement." 2020 WL 5627171, at *7. In *Shah*, class members submitted 1,650 claims. *Id*. Here, no exclusion requests were received in comparison to 590 claims, an incredibly favorable reaction to the Settlement.

### D. That Class Counsel—with significant experience litigating TCPA class actions like this one—firmly supports the settlement weighs in favor of approval.

Plaintiff's counsel brings substantial experience litigating—and resolving—TCPA class actions and has earned an excellent reputation in his field. *See* ECF No. 47-1 (outlining Class Counsel's considerable experience). Both Plaintiff and his counsel firmly believe that the Settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Class. This further supports the fairness of the settlement. *See In re TikTok, Inc.*, 617 F. Supp. 3d at 938 ("Additionally the opinion of competent class counsel supports approval of the proposed settlement."); *Edwards v. Ed. Mgmt. Corp.*, No. 1:18-cv-03170-RLY-DLP, 2022 WL 3213277, at *6 (S.D. Ind. June 13, 2022) (noting that "district courts are entitled to rely heavily on the opinion of competent counsel.") (internal citation omitted); *accord Swift v. Direct Buy, Inc.*, Nos. 11-401, 11-415, 11-417, 12-45, 2013 WL 5770633, at *7 (N.D. Ind. Oct. 24, 2013) (Simon, J.) ("[A]s the Court has already noted, the 'opinion of competent counsel' supports a determination that the settlement is fair, reasonable, and adequate under Rule 23.").

### E. The stage of the proceedings and discovery conducted are sufficient to adequately value the claims and reach an informed agreement, further supporting approval.

During the pendency of this litigation, the parties were able to assess the relative strengths and weaknesses of their respective positions, and to compare the benefits of the Settlement to further litigation. The parties engaged in written discovery targeting Defendant's calling practices and the universe of potential class members. As a result of numerous meet-and-confer conferences and in response to Plaintiff's motion to compel, ECF No. 21, Defendant ultimately identified the number of telephone numbers associated with potential class members. As noted in *Swift*, "discovery was sufficient for effective representation, and [] formal discovery would have only

10

taken more time and resulted in the expenditure of additional funds on both sides without achieving a more attractive settlement or any other appreciable benefit." 2013 WL 5770633, at *7.

### F. The remaining Rule 23(e)(2) factors support final approval.

Finally, consideration of the factors set forth in Rule 23(e) likewise supports final approval of the Settlement. More specifically, Rule 23(e)(2) requires courts to consider whether (A) the class representative and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3);[6] and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

Several of these factors—such as whether the relief provided to the Settlement Class is adequate—are subsumed within the above discussion of the *Synfuel Techs.* factors. Beyond that, Plaintiff was, throughout this matter, committed to acting in the best interests of Settlement Class Members and stayed updated on the case through regular discussions with his counsel. He also reviewed his pleadings, regularly communicated with his counsel regarding case strategy, attended mediation, and made all necessary decisions required of him in the best interests of Settlement Class Members. *See* ECF No. 47-1 at 13, ¶¶ 73-77.

In addition, there can be no doubt that the Settlement was negotiated at arm's length as the parties reached their agreement as a result of mediation with Judge Welsh, a well-respected neutral

---

[6] The only operative agreement between the parties is the Settlement Agreement. *See* ECF No. 44-1.

with decades of experience mediating class actions.[7] *See Wong v. Accretive Health, Inc.*, 773 F.3d 859, 864 (7th Cir. 2014) (affirming approval of class action settlement and noting: "Finally, and importantly, the settlement was proposed by an experienced third-party mediator after an arm's-length negotiation where the parties' positions on liability and damages were extensively briefed and debated.").

Separately, Rule 23(e)(2)(D) requires that a district court confirm that a settlement treats all class members equitably. According to the Advisory Committee's Note, courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory committee's note (2018).

To that end, all Settlement Class Members have the same legal claims, and each participating Settlement Class Member thus will be treated equitably, as he or she will receive an equal portion of the Settlement Fund after deducting the Expenses. Moreover, the release affects each Settlement Class Member in the same way, as everyone will release the same claims. As such, this factor supports approval. *See Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-660, 2018 WL 6606079, at *5 (S.D. Ill. Dec. 16, 2018) ("This proposal is fair and equitable because the class members' interests in the Avery judgment were undivided when they were lost and, thus, each class member's damages were identical. The proposed Settlement therefore entitles each class member to an equal, pro-rata share of the Settlement fund.").

### III.    The notice program complied with Rule 23 and due process.

Pursuant to Rule 23(e), this Court "approve[d] the form and substance of the postcard

---

[7]    *See* https://www.jamsadr.com/welsh/ (last visited Aug. 15, 2023).

notice, claim form, and Question & Answer Notice, which are attached as exhibits to the Settlement Agreement." ECF No. 45 at 4. This Court further noted that "[t]he proposed form and method for notifying the Settlement Class Members of the settlement and its terms and conditions meet the requirements of Rule 23(c)(2)(B) and due process, constitute the best notice practicable under the circumstances, and constitute due and sufficient notice to all persons and entities entitled to the notice." *Id*.

To that end, and as explained in the Santacruz Dec., KCC used all reasonable efforts to provide direct notice to potential Settlement Class Members. To start, KCC performed a reverse lookup process for those telephone numbers identified by Defendant to ascertain the names and postal addresses of potential Settlement Class Members. KCC then ran name and address information through the National Change of Address system, which updates addresses for people who submitted a change of address with the U.S. Postal Service within the past four years. KCC then sent direct notice by postcard, with a detachable claim form, to potential Settlement Class Members, where possible.

Separately, KCC established a dedicated settlement website, through which Settlement Class Members could review relevant documents, review the question-and-answer notice, and submit claims. In addition, KCC established a toll-free telephone number so that Settlement Class Members could ask questions or obtain additional information.

As a result of this substantial notice program, 590 Settlement Class Members submitted claims deemed to be valid.

The notice program, which is industry standard in TCPA class actions like this one, complies with Rule 23 and due process. *See Bonoan v. Adobe, Inc.*, No. 3:19-CV-01068-RS, 2020 WL 6018934, at *2 (N.D. Cal. Oct. 9, 2020) ("This Court approves the form and substance of the

proposed notice of the class action settlement, which includes postcard notice, publication notice, a physical claim form, and the question-and-answer notice and online claim form, which will appear on the dedicated settlement website.").

## Conclusion

Plaintiff respectfully requests, with the agreement of Defendant and without objection from any Settlement Class Members, that this Court enter the accompanying proposed Final Judgment and Order of Dismissal.

Dated: August 15, 2023

/*s/ Michael L. Greenwald*
Michael L. Greenwald
GREENWALD DAVIDSON RADBIL PLLC
5550 Glades Road, Suite 500
Boca Raton, Florida 33431
Tel: (561) 826-5477
mgreenwald@gdrlawfirm.com

*Class Counsel*